

JUDGE PAULEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KWAINE THOMPSON,

14 CV 0512

                                          Docket No.

                            Plaintiff,                    **VERIFIED COMPLAINT**

      -against-

                                        Jury Trial Demanded
CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION, COMMISSIONER
DORA B. SCHRIRO, CORRECTION OFFICERS JOHN
DOE, fictitious names used to identify presently unknown
correction officers,

                          Defendants.
------------------------------------------------------------------X

RECEIVED
JAN 28 2014
U.S.D.C. S.D.N.Y.
CASHIERS

      Plaintiff, KWAINE THOMPSON, by his attorneys, HELD & HINES, LLP, complaining

of the defendants, hereinafter states and alleges as follows upon information and belief:

## PRELIMINARY STATEMENT

      1.      Plaintiff commences this action seeking compensatory damages, punitive

damages, and attorney's fees for violations of his civil, statutory and common law rights by the

defendants, their agents, servants and/or employees, while acting under color of law, as said

rights are secured by the Constitution of the United States of America, 42 U.S.C. §1983 *et seq.*,

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, Section 504

of the Rehabilitation Act, 29 U.S.C. §794, and the Religious Land Use and Institutionalized

Persons Act ("RLUIPA"), 42 U.S.C. §2000cc *et seq.* Plaintiff also asserts supplemental state

law claims for violations of his rights secured by the Constitution of the State of New York, as

well as Article 15 of the New York State Executive Law ("NYS Human Rights Law"), Section

40 *et seq.* of the New York State Civil Rights Law (the "NYS Civil Rights Law"), and Sections

8-107 *et seq.*, 8-502 *et seq.* and 8-603 *et seq.* of the Administrative Code of the City of New

York (the "City Human Rights Law"), as well as common law claims of assault, battery, negligent hiring, training and retention, intentional infliction of emotional distress, negligent infliction of emotional distress, neglect and failure to provide medical treatment, general negligence, and failure to protect.

2.      On or about July 29, 2013, the plaintiff was assaulted and battered by uniformed correction officers of the New York City Department of Correction in an unprovoked and excessive use of force.  The defendants' foregoing conduct caused Plaintiff to suffer physical, psychological and emotional injuries, deprivation and violation of his civil, statutory and common law rights, and pecuniary loss.

3.      Upon information and belief, in an attempt to cover-up and/or conceal their unlawful conduct, the defendant correction officers and their supervisors, acting individually and/or in concert and conspiracy with one another, then drafted, executed and filed knowingly false statements and reports, wherein the defendant correction officers and their supervisors dishonestly stated that Plaintiff posed a danger to officers, others and/or the facility; that Plaintiff caused and/or threatened to cause serious physical injury to an officer; and the defendant correction officers and their supervisors made other knowingly false allegations against Plaintiff.

4.      Upon information and belief, the defendant correction officers and their supervisors lied, submitted false statements, and/or purposely failed to fully and faithfully investigate the subject incident, all in an effort to prevent the aforesaid unlawful conduct from coming to light.

5.      Following the subject incident, Defendants were deliberately indifferent to Plaintiff's injuries and medical needs and denied him reasonable and timely access to medical

care and treatment, thereby exacerbating Plaintiff's pain and suffering and causing an unnecessary and wanton infliction of pain.

6.     Following the subject incident, Plaintiff's treating physicians directed that he be given a strict liquid diet.  Plaintiff requested a reasonable accommodation from the defendants in the form of a kosher liquid diet in accordance with his qualified medical disability and religious beliefs.  Defendants summarily denied same, in further violation of Plaintiff's constitutional, statutory and common law rights, causing the plaintiff to suffer additional physical, psychological and emotional injuries, and deprivation and violation of his rights.

7.     As a result of the defendants' unlawful conduct set forth herein, Plaintiff was caused and continues to suffer physical, psychological and emotional injuries and pecuniary loss.

## JURISDICTION AND VENUE

8.     This action is brought pursuant to 42 U.S.C. §§1983, 1985, 1986 and 1988; the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. §794; and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc *et seq.*; the Constitution of the State of New York; the NYS Human Rights Law; the NYS Civil Rights Law; the City Human Rights Law; and the Charter and Administrative Code of the City of New York.

9.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforesaid statutory and constitutional provisions.

10.     Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims which arise under the relevant provisions of New York state law.

11.    Plaintiff's claim for attorneys' fees and costs is predicated upon 42 U.S.C. §1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983, as well as New York C.P.L.R. Art. 86 and City Human Rights Law §8-502(f) for pendent claims arising under New York state and local law.

12.    Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred within Bronx County, New York, which is within this judicial district.

## PARTIES

13.    At all times mentioned herein, the plaintiff was and remains a resident of the State of New York.

14.    Upon information and belief, and at all times mentioned herein, the defendant, City of New York (hereinafter referred to as the "City"), was and remains a body corporate and politic, constituting a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

15.    Upon information and belief, and at all times mentioned herein, the City maintains Defendant, City of New York Department of Correction (hereinafter referred to as the "DOC"), pursuant to law.

16.    Upon information and belief, and at all times mentioned herein, the DOC was and remains under the supervision, direction, control and/or employ of the City.

17.    Upon information and belief, and at all times mentioned herein, the DOC was and remains a department, division or agency of the City.

18.    At all times mentioned herein, Defendant Commissioner Dora B. Schriro (hereinafter referred to as the "Commissioner") was the appointed Commissioner of the City of

New York Department of Correction.

19.      Pursuant to Section 500-c, subd. 2, of the New York State Correction Law, the Commissioner has custody of the correctional facilities within the City of New York, including but not limited to the correctional facility where the subject incident occurred.

20.      Pursuant to Section 500-c, subd. 4, of the New York State Correction Law, the plaintiff was confined to the custody of the Commissioner.

21.      Pursuant to Section 623, subd. 1, of the New York City Charter, the Commissioner is charged with managing the custody and care of the plaintiff.

22.      Pursuant to Section 623, subd. 5, of the New York City Charter, the Commissioner has "[a]ll authority in relation to the custody and transportation of persons held for any cause in criminal proceedings...who require hospital care", including but not limited to the plaintiff herein.

23.      At all times mentioned herein, the Commissioner was acting under the color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York, City of New York and/or the City of New York Department of Correction.

24.      The Commissioner is sued herein in her individual and official capacities.

25.      At all times mentioned herein, Defendants, Correction Officers John Doe (hereinafter the "defendant correction officers"), were correction officers[1] employed by the City. The identities of the defendant correction officers are not presently known, but they are believed to be correction officers and supervisory personnel endowed and bestowed with various ranks and appointments upon them by the City and/or DOC, and are sued in their capacities as individuals as well as in their official capacity as correction officers acting under the color of

---

[1] As used herein, the term "correction officer" is intended to refer to City of New York Department of Correction officers in the general and not to any specific rank, title or position.

law.

26.      At all times mentioned herein, the defendant correction officers were employed by the DOC.

27.      At all times mentioned herein, the City was the public employer of the defendant correction officers.

28.      At all times mentioned herein, the DOC was the public employer of the defendant correction officers.

29.      At all times mentioned herein, the defendant correction officers were acting under the color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York, City of New York and/or the City of New York Department of Correction.

30.      The defendant correction officers were those individuals involved in the excessive use of force on Plaintiff, the individuals who denied and/or delayed Plaintiff's access to medical care and treatment, the individuals who denied Plaintiff a kosher liquid diet, the individuals who failed to report or truthfully report the incidents alleged herein, and the individuals who failed to schedule and arrange medical appointments and follow-up care for Plaintiff, including but not limited to transportation to and from said appointments.

31.      Upon information and belief, and at all times mentioned herein, the City, its departments, agents, servants and/or employees, owned, operated, maintained, managed, supervised, directed and/or controlled the jails and correctional facilities within the City of New York, including but not limited to, the Anna M. Kross Center (hereinafter "AMKC"), located on Riker's Island, 18-18 Hazen Street, East Elmhurst, New York.

32.      Upon information and belief, and at all times mentioned herein, the DOC, its

departments, agents, servants and/or employees, owned, operated, maintained, managed, supervised, directed and/or controlled the jails and correctional facilities within the City of New York, including but not limited to, AMKC.

33. Upon information and belief, and at all times mentioned herein, the City and/or DOC were charged with the hiring, training, retention, direction, supervision, discipline, oversight, appointment and promotion of correction officers, supervisors and staff in their employ, including but not limited to defendant correction officers.

34. Upon information and belief, and at all times mentioned herein, defendant correction officers were acting under the direction, supervision, authority and/or control of the City and/or DOC.

35. Upon information and belief, and at all times mentioned herein, the City, its departments, agents, servants and/or employees, managed, supervised, directed and/or controlled the custody, confinement, care and treatment of those persons arrested, confined and/or otherwise detained in its various jails, including but not limited to the plaintiff.

36. Upon information and belief, and at all times mentioned herein, the DOC, its agents, servants and/or employees, managed, supervised, directed and/or controlled the custody, confinement, care and treatment of those persons confined and/or detained in its various jails, including but not limited to the plaintiff.

37. At all times mentioned herein, the City, DOC, Commissioner and defendant correction officers assumed the custody and care of the plaintiff.

38. At all times mentioned herein, the City, DOC, Commissioner and defendant correction officers were entrusted with the custody and care of the plaintiff.

39. At all times hereinafter mentioned, the City, DOC, Commissioner and defendant

correction officers assumed a duty of care to the plaintiff.

40.     At all times hereinafter mentioned, the City, DOC, Commissioner and defendant correction officers owed a duty of care to the plaintiff.

41.     At all times hereinafter mentioned, the City, DOC, Commissioner and defendant correction officers owed a special duty of care to the plaintiff.

42.     The DOC, through its senior officials at the central office and in each of its jails, promulgates and implements policies, including those with respect to use of force, reporting and investigation of unlawful conduct by uniformed staff, and provision and access to medical care and other program services mandated by local law and court orders. The Commissioner and senior officials in the DOC are aware of and tolerate certain practices by subordinate employees, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the DOC, constitute unwritten DOC policies or customs.

43.     At all times mentioned herein, AMKC's warden(s), deputy warden(s), security captains, medical director(s), captains, lieutenants, sergeants, and other supervisors had direct, first-line supervisory responsibilities over the defendant correction officers, including responsibility for taking appropriate measures to ensure and protect the civil and statutory rights and personal safety of detainees and prisoners in general, and the plaintiff in particular, who come into contact with said correction officers. These responsibilities were required to be carried out in a manner consistent with the laws and mandates that govern the United States of America, the State of New York, and the City of New York, as well as DOC directives, consent decrees and orders.

44.     As alleged herein, the defendant correction officers used excessive physical force

on Plaintiff; assaulted and battered Plaintiff without legal justification; violated Plaintiff's civil and constitutional rights while acting under color of state law; failed to provide Plaintiff with reasonable accommodations for his disability; discriminated against Plaintiff based upon his religious beliefs; drafted and filed, or conspired to file, knowingly false disciplinary reports, incident reports, and medical reports regarding the subject incident; ignored, refused, denied, and/or delayed Plaintiff's requests for medical attention for the injuries alleged herein; gave knowingly false statements; and took specific and definitive measures to cover up evidence of their unlawful activities.

## STATEMENT OF FACTS

45.     On or about July 29, 2013, Plaintiff, KWAINE THOMPSON, was confined to the custody, care and control of the defendants.

46.     On said date, at approximately 2:00 p.m., Plaintiff was confined by the defendants to the Intake Cell at AMKC.

47.     Plaintiff was confined to the Intake Cell at AMKC for approximately six (6) days prior to and including July 29, 2013, in violation of law and DOC Directive.

48.     During Plaintiff's confinement to the Intake Cell at AMKC he was not provided a bed or mattress to sleep on, and instead, was forced to sit, eat, lay and sleep on the concrete floor.

49.     At the time and place aforesaid, approximately three (3) correction officers (the "assaulting officers") entered the Intake Cell at AMKC with the apparent intention of intervening in a physical altercation between 2-3 unknown prisoners (hereinafter the "fighting prisoners").

50.     Plaintiff was not involved in the aforesaid fight.

51.     At no time prior to entering the Intake Cell at AMKC, did any correction officer issue any verbal command or warning to the fighting prisoners, administer oleoresin capsicum

(O.C.) on the fighting prisoners, or use any other non-physical means of stopping the aforesaid fight.

52.     Instead, the defendant correction officers entered the Intake Cell at AMKC and immediately began indiscriminately striking various individuals therein, including but not limited to the plaintiff, with their batons and fists.

53.     Plaintiff was struck in the jaw by the assaulting officers, fracturing his jaw.

54.     The assaulting officers used unlawful and excessive force upon Plaintiff.

55.     The assaulting officers subjected Plaintiff to cruel, unusual, inhumane and degrading treatment.

56.     The assaulting officers subjected Plaintiff to unnecessary and wanton infliction of pain.

57.     The assaulting officers' conduct was grossly disproportionate to the severity of the circumstances then and there existing.

58.     The assaulting officers did not need to use physical force and/or inflict blows upon Plaintiff as Plaintiff was not involved in the aforesaid fight and did not engage the assaulting officers.

59.     The assaulting officers did not need to use physical force and/or inflict blows upon Plaintiff in self-defense as Plaintiff was not involved in the aforesaid fight and did not engage the assaulting officers.

60.     The assaulting officers did not need to use physical force and/or inflict blows upon Plaintiff in order to maintain order as Plaintiff was not involved in the aforesaid fight and did not engage the assaulting officers.

61.     The assaulting officers did not need to use physical force and/or inflict blows

upon Plaintiff in order to enforce observation of discipline as Plaintiff was not involved in the aforesaid fight and did not engage the assaulting officers.

62.     The assaulting officers did not need to use physical force and/or inflict blows upon Plaintiff in order to secure or control Plaintiff or the Intake Cell as Plaintiff was not involved in the aforesaid fight and did not engage the assaulting officers.

63.     At no point during the time period mentioned herein did Plaintiff neglect or refuse an order of a correction officer or rule or regulation of DOC.

64.     At no point during the time period mentioned herein did Plaintiff resist or disobey any lawful command of a correction officer.

65.     At no point during the time period mentioned herein did Plaintiff offer violence to any officer or other prisoner.

66.     At no point during the time period mentioned herein did Plaintiff injure or attempt to injure DOC property.

67.     At no point during the time period mentioned herein did Plaintiff attempt to escape.

68.     At no point during the time period mentioned herein did Plaintiff attempt to lead or take part in a revolt or insurrection.

69.     Following the subject incident, Defendants, their agents, servants and/or employees, delayed Plaintiff's access to reasonable and appropriate medical care for approximately five (5) hours.

70.     Approximately five (5) hours after the subject incident, Plaintiff was transported to Bellevue Hospital Center ("Bellevue") for treatment of the aforesaid physical injuries.

71.     At Bellevue, Plaintiff was diagnosed with multiple injuries, including but not

limited to three (3) fractures of his mandible that required immediate surgical implantation of plates and screws in his jaw and the wiring of his mouth closed.

72.   Approximately five (5) days later, Plaintiff was discharged and released from Bellevue and returned to Riker's Island.

73.   While at Bellevue, physicians ordered that Plaintiff be placed on a strict liquid diet. Said medical orders also directed that DOC was to continue Plaintiff on a liquid diet upon his discharge from the hospital and return to their custody and care.

74.   While at Bellevue, Plaintiff was provided a kosher liquid diet in accordance with his religious observation and beliefs.

75.   Upon his discharge from Bellevue and return to the custody and control of the defendants on Riker's Island, Plaintiff requested a kosher liquid diet from Defendants.

76.   Defendants refused to provide Plaintiff with a kosher liquid diet.

77.   As a result of Defendants' refusal to provide Plaintiff with a kosher liquid diet, Plaintiff was unable to eat for approximately ten (10) days, causing Plaintiff to suffer and sustain additional physical, psychological and emotional injuries.

78.   Following Plaintiff's return to Riker's Island, and throughout the remainder of his detention threat, Plaintiff repeatedly requested follow-up medical care for the aforesaid injuries; however, Defendants routinely denied and/or delayed Plaintiff's access to same, causing Plaintiff to suffer and sustain additional physical, psychological and emotional injuries. On one such occasion, Defendants transported Plaintiff to Bellevue for what was intended to be a follow-up examination to check on his post-operative recovery and removed the wiring; however, upon arrival at Bellevue, the defendant correction officers inexplicably refused to allow Plaintiff to be seen by medical staff threat and returned him to jail without examination or removal of the

wires.

79.     As a result of the excessive use of force incident, Plaintiff suffered physical injuries of an objectively serious and important nature; however, the defendants delayed and/or failed to authorize, make arrangements and provide transportation for, or provide timely and adequate medical care and treatment to Plaintiff.

80.     Plaintiff's medical condition was of such gravity that it can be considered a serious medical condition. Defendants, by ignoring his requests for treatment, acted with deliberate indifference.

81.     As a result of the defendants' deliberate indifference, Plaintiff experienced prolonged and significantly increased pain and suffering.

82.     Plaintiff's aforesaid injuries significantly affect his daily activities, including but not limited to his ability to breathe, speak, run, eat, drink and chew.

83.     The failure of the defendants to provide due and timely medical care and treatment to the plaintiff caused further and substantial harm to the plaintiff, including but not limited to increased and prolonged pain, and psychological and emotional injuries.

84.     The supervisory staff within the DOC and the command structure of the DOC knew and/or know that the pattern of harassment, intimidation, physical abuse, cover-up, discrimination, and denial of medical care, as described above, existed and still exists within the DOC. The DOC's failure to take measures to curb this pattern of brutality constitutes acquiescence in the known unlawful behavior of its officers. The prevalence of these practices and general knowledge of their existence, and the failure of these defendants to take remedial action despite the fact that the foregoing has been persistently brought to the DOC's attention, constitutes deliberate indifference to the rights and safety of all individuals in their custody, and

Plaintiff in particular. These defendants' conduct has been a substantial factor in the continuation of such violence and a proximate cause of the constitutional violations alleged in this Complaint.

85.    DOC operates under a system-wide policy. With some exceptions, the DOC trains all of its officers at a single Training Academy according to a uniform curriculum; maintains a centralized Investigation Division to investigate allegations such as those contained herein under uniform procedures; and maintains a centralized unit to conduct administrative prosecutions (or to decline to prosecute, or to plea-bargain) in those few instances where the DOC substantiates the allegation(s).

86.    The supervisory staff of the DOC has consistently failed to investigate allegations such as those contained herein and to discipline officers who have violated DOC guidelines. The investigation of these incidents by central office and/or supervisory staff reflects a bias in favor of uniformed officers. Furthermore, officers and staff who are known to have violated an individual's civil rights in one command are often transferred by DOC to another command rather than be disciplined, demoted or fired by the DOC.

87.    Upon information and belief, the pattern of misconduct alleged herein has been condoned by the Commissioner and ranking commanders and supervisors of the DOC, who have been or are aware of the number, frequency, and severity of these incidents and of the continuing risk of physical injury at the hands of uniformed officers. The Commissioner, facility wardens and deputies, and supervisors receive and/or received a daily compilation of reports from DOC commands documenting violent incidents, including an officer's use of force. These reports, which are circulated throughout the DOC, contain brief summaries of the incident. These summaries have documented, and continue to document, routine uses of force by officers under

circumstances which very often suggest that the officers' accounts are fabricated to cover up brutality and other misconduct. These reports routinely document injustices the same or similar to the allegations contained herein, and consistently find no basis to question the officer's conduct, even when an officer reports describe conduct which is proscribed by DOC written policy or fails to account for the prisoner's injuries.

88.     With rare exception, officers whose misconduct is brought to the attention of supervisory personnel continue to work without any substantial disciplinary action being taken against them. Many of these officers are simply transferred to another jail, where their misconduct continues.

89.     Although the DOC has a computerized system capable of identifying officers involved in multiple unlawful incidents and/or cover-ups, this information has not been utilized by DOC commanders or supervisors to reduce the severity or incidence of these events. The fact that these abuses by officers remain unchecked and unrestrained leads the staff to believe that they may act with impunity.

90.     Similarly, City and DOC officials and supervisory staff have consistently failed to investigate grievances, prisoner complaints, and Board of Corrections complaints of officer harassment, intimidation and disrespect; excessive uses of force; cover-ups; denial and/or delay of medical treatment or other inattention; discrimination due to physical or mental disability; religious discrimination; violations of DOC directives and guidelines and other misconduct; and have failed to discipline the subjects of those grievances and complaints which were substantiated.

**CONDITIONS PRECEDENT**

91.     On or about September 6, 2013, Plaintiff caused a Notice of Claim to be duly

served and filed with the defendants setting forth the time, place, substance of claim, and description of injuries sustained by the plaintiff.

92.     On or about October 24, 2013, Plaintiff caused an Amended Notice of Claim to be duly served and filed with the defendants.

93.     On or about October 28, 2013, the defendants conducted a hearing of Plaintiff pursuant to Section 50-h of the General Municipal.

94.     More than thirty (30) days have elapsed since the filing of the Notice of Claim and the defendants have neglected and/or refused to make an adjustment thereof.

95.     This action is commenced, including all applicable tolls, within a year and ninety days after said cause of action arose.

96.     This action falls within one or more of the exceptions set forth in CPLR §1602.

**FIRST CLAIM FOR RELIEF:**
**VIOLATIONS OF PLAINTIFF'S CIVIL RIGHTS, 42 U.S.C. §1983**

97.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through ""96", inclusive, of this Complaint, as if same were fully set forth herein at length.

98.     As set forth above, the defendant correction officers, acting under the color of law, did harass, intimidate, assault, batter and use excessive physical force on Plaintiff; conspired to violate Plaintiff's civil rights; ignored, refused, denied and/or delayed Plaintiff's requests for medical attention; failed to follow medical orders; knowingly drafted and/or filed, or conspired to file, false reports, incident reports, and/or medical reports in an effort to cover-up evidence of their unlawful activities, all without legal cause or justification and with purposeful intent to cause harm to Plaintiff.

99.    As set forth above, the Commissioner and DOC supervisors and officers failed to notify City or federal authorities as to what they had seen and/or heard.

100.    As set forth above, the Commissioner and/or DOC supervisory personnel failed to take appropriate action to investigate and report the subject incident.

101.    As set forth above, the subject incident, as well as the defendant correction officers' ignoring, acquiescence, joining and/or complicity in same, constituted an unnecessary, unreasonable, and excessive use of force.

102.    The defendants acted with deliberate indifference to the plaintiff's safety, security, health and immediate medical needs.

103.    As a direct and proximate result of the defendants' deliberate indifference to Plaintiff's objectively serious medical condition, the plaintiff's resulting physical, psychological and emotional injuries, pain and suffering were significantly exacerbated.

104.    As set forth above, the defendants have made every effort to conceal the truth about what actually occurred, including but not limited to covering up, or attempting to cover up, the illegal conduct complained of herein.

105.    The aforesaid acts and omissions violated the plaintiff's clearly established civil rights secured by the United States Constitution and were the direct and proximate cause of the physical, psychological, and emotional injuries he suffered.

106.    The actions of the defendant correction officers were malicious.

107.    As set forth above, the Commissioner, City and DOC have had, and continue to have, a custom and practice of deliberate delay and avoidance in investigating allegations of abuse and other misconduct by their correction officers, to the detriment of the plaintiff.

108.    The Commissioner, City and DOC, their agents, servants and/or employees, including but not limited to the defendant correction officers, by reasonable diligence, could have prevented the aforesaid wrongful acts from being committed.

109.    The Commissioner, City and DOC, their agents, servants and/or employees, including but not limited to the defendant correction officers, by reasonable diligence, could have mitigated the plaintiff's injuries had they intervened in the aforesaid unlawful conduct and/or protected Plaintiff.

110.    The Commissioner, City and DOC, their agents, servants and/or employees, including but not limited to the defendant correction officers, violated Plaintiff's Constitutional rights by:

      a.    Harassing and intimidating Plaintiff;

      b.    Assaulting and battering Plaintiff;

      c.    Using unreasonable and excessive physical force on the plaintiff;

      d.    Failing to intercede on behalf of the plaintiff to prevent the Constitutional violations aforesaid, despite having an opportunity to do so, but due to their deliberate indifference declined or refused to do so;

      e.    Failing to render timely and due medical care and treatment to Plaintiff;

      f.    Failing to provide Plaintiff with access to timely and due medical care and treatment;

      g.    Discriminating against Plaintiff based upon his religious beliefs;

      h.    Denying and/or depriving the plaintiff of free exercise of his religion;

      i.    Depriving the plaintiff access to and redress from the courts;

      j.    Denying the plaintiff equal protection of the laws;

      k.     Engaging in a cover-up in order to conceal the wrongful and unlawful conduct taken against the plaintiff; and

      l.     By subjecting Plaintiff to cruel and unusual punishment.

111.    As set forth above, said defendants were deliberately indifferent to Plaintiff's medical condition by their failure to provide access to timely and appropriate medical care and carry out medical orders (e.g., arbitrarily discontinued Plaintiff's liquid diet); failed to take steps to prevent the plaintiff's condition from degenerating (e.g., failure to arrange and transport medical appointments and follow-up care); their conduct was so grossly incompetent, inadequate, and excessive as to shock the conscience, and were so intolerable to fundamental fairness; and maliciously and sadistically used force to cause harm.

112.    As a result of the foregoing, Plaintiff was caused to be subjected to the deprivations of rights, privileges and/or immunities secured by the Constitution and statutes of the United States of America and has been damaged thereby.

113.    As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries and pecuniary loss.

114.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements pursuant to 42 U.S.C. §1988.

## SECOND CLAIM FOR RELIEF:
## 42 U.S.C. §§1985 AND 1986

115.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "114", inclusive, of this Complaint, as if same were fully set forth herein at length.

116.     The Commissioner, City and DOC, their employees, agents and/or servants, including but not limited to the defendant correction officers and supervisors, acting under the color of law, willfully conspired with one another to deprive the plaintiff of his constitutional rights, including but not limited to his right: to be free from cruel and unusual punishment; to be free from the use of unreasonable and/or excessive force; to be free from unreasonable delay and/or denial of medical attention; to be free from harassment and intimidation; to be free from discriminatory practices based upon his religious beliefs and/or disability; to be free from unlawful search and seizure; to equal protection of the law; to equal privileges and immunities under the law; to associate and speak freely; and to have access to and seek redress in the courts.

117.     It was part of said conspiracy that the defendant correction officers did cause and/or permit Plaintiff to be assaulted and battered.

118.     It was part of said conspiracy that the defendants, their employees, agents and/or servants, did deny and/or delay due and necessary medical care and treatment to the plaintiff.

119.     It was part of said conspiracy that said defendants did fail to protect the plaintiff from known harms while he was in their custody.

120.     In furtherance of the conspiracy and in order to cover up their unlawful conduct, Defendants engaged in the following:

        a.     Fabricating and contriving criminal reports and/or records;

        b.     Failing to make medical treatment timely available to Plaintiff;

        c.     Although they were aware of the subject events and were required to report it, deliberately suppressing the truth; and

d.       Submitting false reports, statements and/or testimony to support and corroborate the fabricated allegations lodged against the plaintiff, for their own benefit.

121.   As a result of said conspiracy and/or said defendants' furtherance of the conspiracy, Plaintiff has been injured and deprived of the rights and privileges afforded by the Constitution and statutes of the United States of America.

122.   Said defendants had knowledge that a 42 U.S.C. §1985(3) conspiracy was in progress, had the power to prevent or aid in preventing the conspiracy from continuing, and neglected or refused to do so.

123.   With due diligence, Defendants could have promptly reported the subject events to superiors and to duly authorized investigators. Their failure to do so contributed to the plaintiff suffering gratuitously, thereby exacerbating his pain and suffering.

124.   Had said defendants complied with the law and furnished truthful information to authorities about their conduct and/or Plaintiff's conduct, the §1985(3) conspiracy would not have succeeded to the extent that it did.

125.   As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries and pecuniary loss.

### THIRD CLAIM FOR RELIEF:
### MUNICIPAL LIABILITY

126.   Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "125", inclusive, of this Complaint, as if same were fully set forth herein at length.

127.   The Commissioner and defendant correction officers, collectively and individually, while acting under color of state and local law, engaged in conduct that constituted

a custom, usage, practice, procedure or rule of the City and/or DOC but which is forbidden by the Constitution of the United States.

128.   That prior to July 29, 2013, the Commissioner, City and DOC developed and maintained customs, policies, usages, practices, procedures and rules exhibiting deliberate indifference to the constitutional rights of prisoners, which caused the violations of the plaintiff's rights.

129.   That the aforementioned customs, policies, usages, practices, procedures and rules of the City and DOC included, but were not limited to: (a) ignoring the constitutionally-protected civil rights of persons in their custody and control; (b) ignoring the statutory rights of persons in their custody and control; (c) depriving persons in their custody and control their constitutional and statutory rights; (d) using force in an unreasonable, unnecessary, unjustified and excessive manner; (e) failing to adequately instruct and supervise the correction officers under said defendants' control in the proper and appropriate care and treatment of prisoners in their custody and control; (f) inadequately and/or improperly investigating complaints of harassment, intimidation, misconduct, excessive use of force, officer abuse, discrimination, denial and/or delay of medical care, refusals to provide reasonable accommodations, and other misconduct by correction officers and supervisors, and inadequately punishing the subjects of those complaints which were substantiated; (g) tolerating acts of brutality; (h) the Commissioner, Internal Affairs Bureau, and Inspector General having substantially failed in their responsibilities to investigate misconduct and discipline offenders; (i) having jails that operate to insulate correction officers who engage in criminal or other serious official misconduct from detection, prosecution, and punishment, and are maintained with deliberate indifference; (j) allowing correction officers and supervisors to engage in a pattern and practice of actively and passively covering up misconduct

by fellow officers, thereby establishing and perpetuating a "code of silence", which has become so ingrained in the defendants so as to constitute a policy of the City and DOC; (k) discriminating against disabled prisoners; (l) discriminating against prisoners who hold certain religious beliefs; and (m) having policies or practices that have disparate impact on prisoners who hold certain religious beliefs.

130.    The long-standing failure or refusal to supervise the correction officers under said defendants' control, including supervisory staff, is now so institutionalized as to constitute a policy or custom of tolerating and authorizing the type of abuse alleged herein.  It is this policy or custom of abuse and cover-up that has caused the deprivation of the plaintiff's rights.

131.    Said defendants' policy or custom of tolerating and authorizing this type of abuse is further evidenced by frequent and significant findings of misconduct over a period of years by command personnel, supervisors, and the correction officers they supervise.

132.    The failures and refusals by the Commissioner, City and DOC to hold these supervisors and correction officers accountable is a proximate cause of the injuries sustained by the plaintiff, and undoubtedly hundreds of other persons.

133.    Through promotions and other financial and status incentives, the Commissioner, City and DOC have the power to reward correction officers who perform their jobs adequately and to punish -- or at the very least fail to reward -- those who do not.  The Commissioner, City and DOC's actions and omissions have created and maintained the perception among high-ranking supervisors that a supervisor who turns a blind eye towards evidence of officer harassment and intimidation, cover-up, medical neglect, or other misconduct, and fails to investigate these incidents, will suffer no damage to his or her career or financial penalty.

134.    The pattern of unchecked abuse by correction officers and supervisory staff, the extent to which these unlawful practices have been adopted by significant numbers of the staff, and the persistent failure or refusal of the Commissioner, City and DOC to supervise these persons properly and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorizes the claimed misconduct against the plaintiff

135.    The foregoing customs, policies, usages, practices, procedures and rules of the Commissioner, City and DOC constituted deliberate indifference to the safety, well-being and constitutional rights of the plaintiff.

136.    The foregoing customs, policies, usages, practices, procedures and rules of the Commissioner, City and DOC were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

137.    The foregoing customs, policies, usages, practices, procedures and rules of the Commissioner, City and DOC were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

138.    Prior to and at the time of the subject date of incident, there existed a pattern and practice of correction harassment, intimidation, excessive uses of physical force, cover-ups and conspiracies to cover-up unlawful conduct, refusals and/or failures to provide medical care or make medical care timely available, failures to conduct unbiased and thorough investigations of same and to discipline staff meaningfully and promptly for misconduct, and the long-standing failure or refusal to supervise correction officers, including supervisory staff, are now so institutionalized as to constitute a policy or custom of tolerating and authorizing the wrongs alleged herein.  It is this policy or custom of abuse and cover-up that has caused the deprivation of Plaintiff's constitutional rights.

139.    The Commissioner, City and DOC have failed or refused to hold accountable high-ranking supervisors (i.e., captains, lieutenants, assistant deputy commissioners, deputy commissioners, and commissioner) in the face of frequent and significant misconduct, over a period of years, by these supervisors and by the officers they supervise. This failure has subjected Plaintiff and other members of the public to the constitutional and statutory violations alleged herein. This failure is a proximate cause of the injuries sustained by the plaintiff and by other members of the public.

140.    As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries and pecuniary loss.

141.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, together with attorney's fees, costs, expert's fees, and disbursements pursuant to 42 U.S.C. §1988.

### FOURTH CLAIM FOR RELIEF:
### FAILURE TO PROTECT AND NEGLECT

142.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "141" inclusive, of this Complaint, as if same were fully set forth herein at length.

143.    All defendants, their agents, servants and employees, owed a duty to care and protect Plaintiff while he was in their custody, control and care.

144.    As set forth above, all defendants failed to protect Plaintiff from known and dangerous harms.

145.    As set forth above, Defendants failed to intervene, mitigate and/or stop the events alleged herein.

146.   As set forth above, Defendants failed to provide timely and adequate medical care and treatment to Plaintiff.

147.   As set forth above, Defendants failed to provide Plaintiff with a diet conforming to both medical orders and Plaintiff's religious beliefs.

148.   As set forth above, all defendants knew of and consciously disregarded an excessive risk to Plaintiff's health and safety.

149.   All defendants failed to report the unlawful conduct alleged herein to supervisors.

150.   The Commissioner, City and DOC, their agents, servants and employees, failed to investigate, sanction and/or discipline any of the defendant correction officers for their aforesaid unlawful conduct.

151.   The Commissioner, City and DOC, their agents, servants and employees, failed to render timely medical care to Plaintiff.

152.   The Commissioner, City and DOC, their agents, servants and employees, failed to provide Plaintiff with access to timely and reasonable medical care.

153.   Due to the defendants' failures to protect the plaintiff, he suffered and continues to suffer severe and serious physical, psychological and emotional injuries.

154.   As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements pursuant to 42 U.S.C. §1988.

## FIFTH CLAIM FOR RELIEF:
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT,
## THE REHABILITATION ACT, AND
## THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT

155.   Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs

"1" through "154", inclusive, of this Complaint, as if same were fully set forth herein at length.

156.    At all times herein mentioned, the plaintiff suffered from a "disability", as that term is defined by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102(1).

157.    At all times herein mentioned, the plaintiff's disability prevented him from performing "major life activities", as that term is defined by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102(2).

158.    At all times herein mentioned, the plaintiff was a "qualified individual with a disability", as that term is defined by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131(2).

159.    At all times herein mentioned, the defendants, City and DOC, are "public entities", as that term is defined by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131(1)(a) and (b).

160.    Said defendants, their agents, servants and employees, repeatedly discriminated against the plaintiff due to his disability, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. §794.

161.    Said defendants, their agents, servants and employees, repeatedly discriminated against the plaintiff due to his religious beliefs, in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc et seq.

162.    Said defendants, their agents, servants and employees, discriminated against the plaintiff with respect to the acts and omissions associated with their custody, care and control of the plaintiff, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§12101 et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. §794, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc et seq.

163.    Said defendants, their agents, servants and employees, discriminated against the plaintiff by failing to provide the plaintiff with reasonable and adequate accommodations; by failing to provide Plaintiff with a liquid diet, although directed to by physicians; by failing to provide Plaintiff with a kosher liquid diet in accordance with his religious beliefs; by failing to provide adequate medical care and treatment to Plaintiff; by being deliberately indifferent to Plaintiff's physical and medical needs; by harassing the plaintiff about his disability; by harassing the plaintiff due to his disability; and in other acts and omissions discriminating against the plaintiff, all in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. §794, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc et seq.

164.    By reason of the foregoing discriminatory acts and omissions of said defendants, their agents, servants and employees, and the failure of said defendants to cure same, Plaintiff was caused to experience physical, psychological and emotional pain and suffering, and in other respects was damaged.

165.    As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages against all defendants, and punitive damages against the individual defendants, together with attorney's fees, costs and disbursements.

**PENDANT STATE CLAIMS**

**FIRST CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:**
**HARASSMENT, INTIMIDATION, ASSAULT AND BATTERY**

166.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "165", inclusive, of this Complaint, as if same were fully set forth herein at length.

167.    As set forth above, Plaintiff was harassed, intimidated, assaulted, and battered by the defendants, their agents, servants and/or employees, including but not limited to the assaulting officers.

168.    The aforesaid uses of intimidation and physical force against Plaintiff was excessive, unnecessary, unprovoked and in violation of common law and the Constitution and statutes of the City and State of New York.

169.    As a result of the foregoing, Plaintiff suffered a violation of his civil and due process rights.

170.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, as well as pecuniary loss.

171.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

**SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:**
**CONSPIRACY**

172.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "171", inclusive, of this Complaint, as if same were fully set forth herein at length.

173.    As set forth above, the Commissioner, defendant correction officers and supervisory staff conspired with and amongst one another to harass, intimidate, assault and batter Plaintiff; to deny and/or delay medical treatment to Plaintiff; to discriminate against Plaintiff based upon his disability and religious belief; to cover up their unlawful conduct; and to otherwise deprive the plaintiff of his Constitutional, statutory and common law rights.

174.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, as well as pecuniary loss.

175.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

### THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: VIOLATION OF NEW YORK CONSTITUTION AND STATUTES

176.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "175", inclusive, of this Complaint, as if same were fully set forth herein at length.

177.    As set forth above, Plaintiff was deprived by defendants of his rights to free exercise of his religion, to be free from unlawful search and seizure, to be free from gratuitous and excessive force and punishment, to be free from cruel and unusual punishment, to be free from discrimination due to disability, and to due process of law, as guaranteed to him by the Constitution and statutes of the City and State of New York and the Charter of the City of New York. The defendants' conduct manifested intentional, negligent and/or deliberate indifference to plaintiff's rights, for which all defendants are liable.

178.    The aforesaid violations, and the failure of supervisory personnel, the Commissioner, City and DOC to take appropriate steps to curb the widespread pattern of same or

similar conduct by their correction officers and staff, violated Plaintiff's rights under the New York State Constitution to due process of law, to free exercise of religion, and to be free from degrading treatment and physical abuse.

179.    By their refusal to provide prompt medical attention and a kosher liquid diet to plaintiff after he was injured, the defendants violated Plaintiff's statutory rights.

180.    The defendants conduct complained of herein violated Plaintiff's rights secured by the Constitution of the State of New York, Article 15 of the New York State Executive Law ("NYS Human Rights Law"), Section 40 *et seq.* of the New York State Civil Rights Law (the "NYS Civil Rights Law"), and Sections 8-107 *et seq.*, 8-502 *et seq.* and 8-603 *et seq.* of the Administrative Code of the City of New York (the "City Human Rights Law")

181.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, as well as pecuniary loss.

182.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

### FOURTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

183.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "182", inclusive, of this Complaint, as if same were fully set forth herein at length.

184.    The Commissioner, City and DOC were negligent, careless and/or reckless in the hiring, training, retention, supervision, direction, control, appointment and/or promotion of the their agents, servants and employees, including but not limited to the defendant correction officers, in that said employees lacked the experience and ability to be employed by the City

and/or DOC; in failing to exercise due care and caution in their hiring, appointment and promotion practices, and in particular, hiring individuals who lacked the mental capacity and ability to function as employees of said defendants; in that the defendant-employees lacked the maturity, sensibility and intelligence to be employed by said defendants; in that said defendants knew of the lack of ability, experience and maturity of the defendant-employees when they hired them; in that said defendants, their agents, servants and/or employees, failed to suspend and/or terminate the defendant-employee(s) when such action was either proper or required; and in being otherwise careless, negligent and reckless in the instance.

185.    The failure of the Commissioner, City and DOC to adequately train their agents, servants and employees, including but not limited to the defendant correction officers, in the exercise of their employment functions, and their failure to enforce the laws of the State of New York and the Charter, rules and regulations of the City of New York, is evidence of the reckless lack of cautious regard for the rights of the prisoners in their custody and Plaintiff in particular, and exhibited a lack of that degree of due care which prudent and reasonable individuals would show.

186.    The Commissioner, City and DOC knew or should have known in the exercise of reasonable care, the propensities of their agents, servants and employees, including but not limited to the defendant correction officers, to engage in the wrongful conduct heretofore alleged in this Complaint.

187.    The Commissioner, City and DOC knew or should have known that their policies, customs and practices, as well as their negligent hiring, retention, supervision, training, appointment and promotion of their agents, servants and employees, including but not limited to the defendant correction officers, created an atmosphere where the most prominent offenders felt

assured that their most brazen acts of abuse, misconduct and neglect would not be swiftly and effectively investigated and prosecuted.

188.    That the mistreatment and abuse of the plaintiff, as set forth above, was the reasonably foreseeable consequence of said defendants' negligent conduct.

189.    The aforesaid acts of the Commissioner, City and DOC, their agents, servants and employees, resulted in the plaintiff being harassed, intimidated, assaulted, battered, discriminated against, denied and/or delayed medical treatment, and his civil rights being violated.

190.    The aforesaid acts of the Commissioner, City and DOC resulted in the plaintiff being caused to suffer and continue to suffer severe physical, psychological and emotional pain and suffering, and in other respects were damaged.

191.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, attorney's fees, costs, expert's fees, and disbursements.

## FIFTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: NEGLECT AND FAILURE TO PROVIDE MEDICAL TREATMENT

192.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "191", inclusive, of this Complaint, as if same were fully set forth herein at length.

193.    Defendants, their agents, servants and/or employees, were required to make available and/or provide medical care and treatment to the plaintiff while he was in their custody and control.

194.    The defendants knew or should have known the extent of the injuries Plaintiff sustained during the subject incident and intentionally and/or negligently delayed, denied and/or failed to provide and/or make medical care and treatment available to Plaintiff.

195.    The defendants knew or should have known that their neglect, denial and/or delay of medical care and treatment to the plaintiff created an unreasonable risk of bodily injury.

196.    The defendants' neglect, denial and/or delay of medical care and treatment did cause and/or exacerbate Plaintiff's physical, psychological and emotional pain and suffering.

197.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

### SIXTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

198.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "197", inclusive, of this Complaint, as if same were fully set forth herein at length.

199.    The aforesaid acts of the defendants, their agents, servants and employees, acting individually and/or in conjunction with the other defendants, were intentional, malicious and excessive, and served no reasonable or legitimate penological interest.

200.    The defendants' intentional, reckless and/or negligent infliction of emotional and mental distress constituted misconduct of an egregious and outrageous nature that exceeds all bounds usually tolerated by society and unreasonably endangered Plaintiff's physical safety.

201.    As a result of the foregoing, Plaintiff suffered severe and serious physical, psychological and emotional injuries.

202.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

## SEVENTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
### NEGLIGENCE

203.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "202", inclusive, of this Complaint, as if same were fully set forth herein at length.

204.    As set forth above, Defendants, their agents, servants and employees, were negligent and the proximate cause of injuries and damages suffered by the Plaintiff.

205.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries.

206.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

## EIGHTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
### *RESPONDEAT SUPERIOR*

207.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "206", inclusive, of this Complaint, as if same were fully set forth herein at length.

208.    Inasmuch as the Commissioner and defendant correction officers were acting for, upon, and/or in furtherance of the business of their employer(s) and/or within the scope of their employment, the City and DOC are liable, jointly and severally, under the doctrine of *respondeat superior* for the tortious actions of same.

## NINTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
### FAILURE TO PROTECT

209.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "208" inclusive, of this Complaint, as if same were fully set forth herein at length.

210.   All defendants, their agents, servants and employees, owed a duty to care and protect Plaintiff while he was in their custody, control and care.

211.   As set forth above, all defendants failed to protect Plaintiff from known and dangerous harms, including themselves and each other.

212.   As set forth above, each of the defendant correction officers failed to intervene, mitigate and/or stop the subject incident at any time during the happening of the incident.

213.   As set forth above, the defendants failed to make timely and adequate medical care and treatment to Plaintiff following the subject beating.

214.   As set forth above, all defendants knew of and consciously disregarded an excessive risk to Plaintiff's health and safety.

215.   All defendants failed to report the abusive conduct of the defendant correction officers to supervisors or other authorities.

216.   The Commissioner, City and DOC, their agents, servants and employees, failed to investigate, sanction and/or discipline any of the defendant correction officers for their aforesaid unlawful conduct.

217.   That due to said defendants' failures to protect the plaintiff, he suffered and continues to suffer severe and serious physical, psychological and emotional injuries.

218.   As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

## TENTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
## PRIMA FACIE TORT

219.   Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "218" inclusive, of this Complaint, as if same were fully set forth herein at length.

220.   The aforesaid conduct of the defendants, their agents, servants and employees, as well as their delay and failures to act, caused harm to be inflicted upon the plaintiff out of disinterested malevolence and were the proximate cause of the injuries and damages suffered by the plaintiff.

221.   As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries.

222.   As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

## JURY DEMAND

223.   Plaintiff hereby demands a trial by jury of all issues in this matter.

**RELIEF**

**WHEREFORE**, the plaintiff requests compensatory damages against all defendants in an amount to be determined at trial, punitive damages against the individual defendants in an amount to be determined at trial, attorney's fees, costs and disbursements pursuant to law, and such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
       January 10, 2014

                                        Yours, etc.,

                                        **HELD & HINES, L.L.P.**

                                        By: Philip M. Hines, Esq.
                                        *Attorneys for Plaintiff*
                                        Office and P.O. Address
                                        2004 Ralph Avenue
                                        Brooklyn, New York 11234
                                        (718) 531-9700

## VERIFICATION

**STATE OF NEW YORK** )
) ss:
**COUNTY OF NEW YORK** )

KWAINE THOMPSON, being duly sworn deposes and says:

That deponent is the plaintiff in the within action; that deponent has read the foregoing **VERIFIED COMPLAINT** and knows the contents thereof, that same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes to be true.

_____
KWAINE THOMPSON

Sworn before me this 10th
day of January, 2014

_____
NOTARY PUBLIC

ATHANASIOS TOMMY SGOURAS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02SG6275401
Qualified in Queens County
Commission Expires January 28, 20__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

KWAINE THOMPSON,                                              Docket No.

                              Plaintiff,

        -against-

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION, COMMISSIONER
DORA B. SCHRIRO, CORRECTION OFFICERS JOHN
DOE, fictitious names used to identify presently unknown
correction officers,

                              Defendants.
----------------------------------------------------------------------X

## SUMMONS AND VERIFIED COMPLAINT

**HELD & HINES, L.L.P.**
**Attorneys for Plaintiff(s)**
**Office & Post Office Address**
**2004 Ralph Avenue**
**Brooklyn, New York 11234**
**(718) 531-9700**

**Signature (Rule 130-1.1-a)**

PHILIP M. HINES, ESQ.